COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-165-CV

IN THE INTEREST OF J.K.H., A CHILD 

------------

FROM THE 211TH
 DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury found that Appellant Victoria H. knowingly placed or knowingly allowed her daughter, J.K.H., to remain in conditions or surroundings which endangered the physical or emotional well-being of the child, that Appellant engaged in conduct or knowingly placed J.K.H. with persons who engaged in conduct which endangered the physical or emotional well-being of the child, that Appellant knowingly engaged in criminal conduct that resulted in her conviction of an offense of confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the petition, and that termination of the parent-child relationship between Appellant and J.K.H. is in the child’s best interest.  The trial court terminated Appellant’s parental rights in accordance with the verdict.

In a timely combined motion for new trial and statement of points, Appellant challenged the legal and factual sufficiency of the evidence to support each finding.  The trial court denied the motion and held that the appeal was frivolous.  On appeal, Appellant contends that trial court abused its discretion by determining that the appeal is frivolous because the evidence is legally and factually insufficient to support the verdict.

Our review of the evidence shows that Appellant, who was twenty-seven at the time of trial, testified that she first used marijuana when she was sixteen years old and first used methamphetamine when she was nineteen years old.  She stated that she stopped using when she found out that she was pregnant with her first daughter, S.S.  Appellant admitted that she began using methamphetamine again when S.S. was seven or eight months old and that she used one or twice a month, on weekends.  While S.S. was still small, Appellant and her husband were arrested for the possession of more than four hundred grams of methamphetamine.  The police found the methamphetamine hidden in the father’s closet in the couple’s home.  S.S. has lived with her paternal grandmother since her parents’ arrest.  She was seven at the time of trial.  Appellant had not seen S.S. since her arrest and did not visit her while she was out on parole.

In April 2003, Appellant pled guilty and received a two-year sentence for endangering a child and a sentence of ten years’ confinement on the possession charge.  She also received two ten-year sentences for bail jumping, with these sentences to be served after she completed the sentence on the possession charge.  In January 2005, Appellant was released on parole.  She denied any drug use while confined.

Even though Appellant went to the State’s Substance Abuse Felony Program (SAFP) while confined and completed all twelve steps of the twelve-step program before her 2005 release from prison, upon her release she relapsed.  While she attended AA meetings while on parole, she did not work the steps or have a sponsor.  She testified that she met J.K.H.’s father in March 2005 through a friend whom she met in AA.

The evidence on Appellant’s drug use after meeting J.K.H.’s father is conflicting. She admitted at trial that she used methamphetamine twice, once in April and once in May 2005.  Other evidence at trial showed that she had previously stated that she had used every day, that she had a methamphetamine problem, and that methamphetamine had taken over her life.

Appellant also testified that she stopped using methamphetamine in July 2005 when she found out that she was pregnant with J.K.H.  Other evidence showed that she had earlier claimed that she had found out about the pregnancy in October 2005, after she believed that she had gotten sick from the drug use.  Admitted medical records provide that Appellant admitted to methamphetamine use in early pregnancy.  Typed physician notes included in State’s Exhibit 2 provide that she had used a month before J.K.H.’s birth.  Nothing in the handwritten records or testimony substantiates this particular allegation or gives the original source of it, other than the fact that Appellant had been arrested on a drug possession charge (which was later dismissed) three weeks before the birth.

Appellant was released from the county jail after going into labor and, because she had also been charged with parole violations, was under the supervision of her parole officer.  She had her baby in the hospital on December 24.  The baby was born at twenty-nine weeks and weighed about two pounds.  No drugs were detected in the baby.

Appellant testified that she would not have used drugs after discovering the pregnancy because it would have endangered the pregnancy, but Appellant also admitted that she did not get prenatal care and, even though she was uninsured, did not apply for Medicaid during her pregnancy with J.K.H.  She did, however, take vitamins from the drug store.  She also testified that she had had a job but had stopped working because of the pregnancy.

Appellant left the hospital on December 28 and has not seen her daughter since that day.  Appellant’s parole officer took her to the Salvation Army and told her to report the next day.  Instead, Appellant chose not to report because she believed that a warrant had been issued.  The parole officer believed that Appellant had gone to Sanger instead of staying at the Salvation Army.  When Appellant did not report and the parole officer could not reach her, another parole warrant was issued.  Appellant was arrested again in January 2006 and remained confined at the time of trial.  Her parole officer testified that she will likely be released again in 2009.

Appellant admitted that she was not in a position to take care of J.K.H. or offer her permanency at the time of trial.  The father was not in the picture.  No appropriate family placement was available.  Appellant’s mother, Appellant’s first choice of J.K.H.’s caretaker, was also on parole for a methamphetamine offense, and her siblings either had drug issues or life events that prevented their consideration.  A cousin and his wife intervened in the lawsuit, but the trial court struck their pleadings, and they dismissed their petition before trial began.

J.K.H. was placed under the State’s care and was discharged into the State’s custody.  She had remained in foster care from that point.  The State’s plan was to allow a family to adopt J.K.H.  At the time of trial, the State was considering four potential adoptive placements.

The State admitted that it offered no services to Appellant because she was confined.  She testified that she had attended “maybe seven” AA meetings while in the Denton County Jail, from June 2006 until the time of trial approximately eight months later.  She had attended no parenting classes, but she testified that the parenting class in progress when she arrived at the jail was almost over then and that she had mistakenly believed that another one would be offered.  She testified that she was not involved in any rehabilitation programs but was writing in a journal and reflecting.  She said that she had every intent of doing what she was supposed to do by her child and that she deserved a chance to raise her.

Adopting the analysis we have previously provided regarding chronic drug use and endangerment,
(footnote: 2) and applying the appropriate standards of review,
(footnote: 3) we hold that the evidence is legally and factually sufficient to support the jury’s finding that Appellant engaged in conduct which endangered the physical or emotional well-being of the child.
(footnote: 4)  Further, based on the appropriate standards of review,
(footnote: 5) we also hold that the evidence is legally and factually sufficient to support the jury’s finding that termination is in J.K.H.’s best interest.
(footnote: 6)
 Accordingly, we hold that the trial court did not abuse its discretion by determining that the appeal is frivolous.  We overrule Appellant’s sole issue and affirm the trial court’s order finding that Appellant’s appeal from the order terminating her parental rights to J.K.H. would be frivolous.

PER CURIAM

PANEL F: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  December 13, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See In re J.T.G.
, 121 S.W.3d 117, 125–26 (Tex. App.—Fort Worth 2003, no pet.).

3:
See
 
In re J.P.B.
, 180 S.W.3d 570, 573–74 (Tex. 2005) (providing legal sufficiency standard of review);
 
In re H.R.M.
, 209 S.W.3d 105, 108 (Tex. 2006)
; 
In re C.H.
, 89 S.W.3d 17, 28 (Tex. 2002) (both providing factual sufficiency standard of review); 
see also
 
Tex. Fam. Code Ann.
 § 101.007 (Vernon 2002).

4:
See
 
Tex. Fam. Code Ann.
 § 161.001(E) (Vernon 2002).

5:
See
 
J.P.B.
, 180 S.W.3d at 573–74 (providing legal sufficiency standard of review);
 
H.R.M.
, 209 S.W.3d at 108
; 
C.H.
, 89 S.W.3d at 27–28 (both providing factual sufficiency standard of review); 
see also
 Tex. Fam. Code Ann. 
§ 263.307(a) (Vernon 2002); 
In re R.R.
, 209 S.W.3d 112, 116 (Tex. 2006); 
Holley v. Adams
, 544 S.W.2d 367, 371–72 (Tex. 1976) (all discussing best interest and nonexclusive factors for determining it).

6:
See 
Tex. Fam. Code Ann.
 § 161.001(2).